(No. 42034.—

THE PEOPLE *ex rel.* Vermilion County Conservation District *et al.*, Appellees, *vs.* LESTER L. LENOVER, Treasurer of Vermilion County Conservation District, Appellant.

*Opinion filed September 26, 1969.*

CARROL E. SNYDER, of STIFLER & SNYDER, of Danville, for appellant.

JOHN M. JONES, State's Attorney, of Danville, for appellees.

Mr. JUSTICE WARD delivered the opinion of the court:

On December 10, 1968, the Vermilion County Conservation District (hereafter, the "District") adopted an ordinance providing for the issuance by it of general obligation bonds in the principal amount of $1,500,000. The issue's purpose was to finance the acquisition for public benefit of certain real property, under a program designed to conserve the natural resources of the Vermilion River basin. The ordinance also levied taxes to satisfy principal and interest obligations on the bonds. The District subsequently brought this *mandamus* and declaratory judgment action in the circuit court to compel the appellant, the treasurer of the District, to perform certain required duties implementing the bond issue, which the appellant had refused to perform. The litigation was instituted also to resolve questions raised by

the appellant as to the constitutionality of the Conservation District Act and the constitutional authority of the District to issue bonds and to levy taxes to provide for their redemption. The trial court entered a decree directing a writ of *mandamus* to issue and rejecting the appellant's constitutional challenge to the Act and the financing authority of the District. The appeal has come directly to this court, questions under the constitution being involved.

In 1966, voters of Vermilion County approved a referendum to organize a conservation district, under the terms of the Conservation District Act. (Ill. Rev. Stat. 1965, ch. 57½, par. 101 *et seq.*) Under the Act, as originally drawn, members of the board of trustees of the district were to be appointed by the chairman of the county board of Vermilion County. (Ill. Rev. Stat. 1965, ch. 57½, par. 105.) In 1967, the Act was amended, without a referendum, to provide that appointments of district trustees by a county board chairman would be subject to the consent of the full county board. Ill. Rev. Stat. 1967, ch. 57½, par. 105.

It is claimed by the appellant that by virtue of the 1967 amendment, the presently constituted board of the District does not qualify as a "corporate authority", within the meaning of section 9 of article IX of the Illinois constitution, and, therefore, it may not constitutionally levy taxes, as only "corporate authorities" of municipal corporations are authorized to levy taxes under the cited section of the constitution.

An important object of this constitutional provision is to preclude the legislature from granting the power of local taxation to persons beyond the control of those affected by the taxation. (*Harward* v. *St. Clair and Monroe Levee and Drainage Co.,* 51 Ill. 130, 136; see also *Cornell* v. *People ex rel. Walsh,* 107 Ill. 372, 380-381.) The provision has accordingly been construed by this court as a limitation upon the power of the legislature to delegate the right of local taxation to any other than the corporate authorities of the

district to be subjected to the taxation. (*Morgan* v. *Schus-selle*, 228 Ill. 106, 112; *People ex rel. Egan* v. *City of Chicago*, 310 Ill. 534, 537.) The term "corporate authorities," within the purview of section 9 of article IX, has thus been consistently defined as those officers who are either elected directly by the persons to be taxed, or appointed in some manner to which those persons have given their assent. *McFarlane* v. *Hotz*, 401 Ill. 506, 512; 310 Ill. at 537; 228 Ill. at 112.

Here, the District's board of trustees was not directly elected. The appellant concedes that the people of the county, by voting to organize as a conservation district under the Act, consented to the method of appointment of district trustees then provided in the statute. He complains, however, that the 1967 amendment to the statute provides an "altered" form of appointment without the voters' assent, so that the Board is no longer a "corporate authority." To support his argument that the amendment was invalidating, *Cornell* v. *People ex rel. Walsh*, 107 Ill. 372 is cited. However, *Cornell* is clearly not applicable.

In that case, an act which created a park district was approved by referendum vote of the people of the district. The statute provided that all vacancies on the board of commissioners were to be filled by the judge of the circuit court of the county where the district was located. An amendment to the act, which was not submitted for voter approval, changed this method of selection of park commissioners from appointment by the circuit judge of the county to appointment by the Governor. This court held that the commissioners appointed by the Governor under this amendment, with power to impose taxes, did not constitute the corporate authorities of the district, as the people had not assented to this mode of appointment of commissioners. In drawing this conclusion, the court stated that the people of the district had approved only appointment by the the circuit judge and that "It can not be said they would

have given their assent to the act if the appointing power had been left in the hands of the Governor. They may have had the most cogent reasons for consenting to an act where the appointing power was left in the hands of a public officer residing in their own county, occupying a position which of itself would place him above any and all political influences which might be brought to bear upon a political officer of the State entrusted with the appointing power." 107 Ill. at 382.

Here, there has been no comparable transfer, without a referendum, from local to State control of board appointments, nor any other form of abolition or impairment of the method of appointment of trustees approved by the people. Rather, the basic method of appointment of district trustees by the county board chairman is retained under the amendatory legislation; the amendment simply subjects the chairman's appointments to the approval of the county board and thus provides for broadened local control.

To argue that because of the amendment the District's trustees were not appointed in a manner consented to by the people is unrealistic and strained. We find that the board of trustees of the District is a duly constituted corporate authority under the constitution, with appropriate authority to levy taxes.

We find without merit the appellant's related argument that the District's issuing of bonds to be redeemed through taxation, without submitting the proposition to a referendum, is constitutionally forbidden. Specific legislation (section 15 of the Conservation District Act) does empower districts to issue bonds for the acquisition of real property, as here, without obtaining the consent of the electorate. (Ill. Rev. Stat. 1967, ch. 57½, par. 115.) Our expression in *People ex rel. Adamowski* v. *Metropolitan Sanitary District,* 14 Ill.2d 271, is dispositive of the claim that a referendum is constitutionally required: "The taxpayers are given constitutional control over the imposition

of taxes by having a voice in the selection of, or the mode of selection of, the corporate authorities who impose taxes. * * * However, there is no constitutional requirement that the issuance of bonds imposing a burden of taxation be submitted to the voters. * * * The people of the [sanitary] district were not deprived of their property without due process of law by the failure of these amendatory acts to require submission of the question of issuance of bonds for establishing these working cash funds to the vote of the people." 14 Ill.2d at 281-282; accord, *Ruth* v. *Aurora Sanitary Dist.*, 17 Ill.2d 11, 21, 22.

The appellant alleges that the District is merely an "alter ego" of the county and a "sham" which was created in an unconstitutional attempt to avoid the limitations on the fiscal powers of counties imposed by the Illinois constitution. This argument is misguided.

It is true that as called for by section 4 of the Conservation District Act the boundaries of the District are co-extensive with those of Vermilion County. (Ill. Rev. Stat. 1967, ch. 57½, par. 104.) However, as we said in *Board of Education* v. *Upham,* 357 Ill. 263, regarding the corporate existence of a board of education whose boundaries were co-terminous with those of the city of Chicago: "The General Assembly had the power to make the board a body politic, and it did so. Instances are numerous where the territory of one municipal corporation is superimposed upon another. The boundaries of one may be either greater, smaller or co-terminus with the other. The identity of territorial limits of overlapping corporations is immaterial if the corporations have separate and distinct governmental purposes. (*Wilson* v. *Board of Trustees,* 133 Ill. 443.) Each corporation may contract corporate indebtedness up to its constitutional limitation without reference to the indebtedness of any other corporation embraced wholly or in part within its territory. (*Highway Comrs.* v. *City of Bloomington,* 253 Ill. 164.)" 357 Ill. at 267.

Similarly, in *Perkins* v. *Board of County Comrs. of Cook County,* 271 Ill. 449, this court recognized a forest preserve district to be a municipal corporation distinct from the county of its location, though the district and county had identical boundaries and the members of the county board were, *ex officio,* the commissioners of the district. It was stated, at p. 460, that "The power of the legislature in this State to create public corporations is practically unlimited. It may create any conceivable kind of a corporation it sees fit for the more efficient administration of public affairs and endow such corporation and its officers with such powers and functions as it deems necessary and proper for the administration of such corporate powers and affairs. (*People* v. *Bowman,* 247 Ill. 276.) For this purpose it may provide for the organization of corporations which embrace territory situated wholly within or partly within and partly without the boundaries of another municipal corporation." Accord, *People ex rel. Honefenger* v. *Burris,* 408 Ill. 68, 76; *People ex el. Curren* v. *Wood,* 391 Ill. 237, 243.

We judge that the District is a distinct corporate entity, with constitutional fiscal limitations independent of those imposed on Vermilion County.

The Conservation District Act authorizes any county which is not already formed as a forest preserve district and which has a population of less than 1,000,000 people to organize as a conservation district. (Ill. Rev. Stat. 1967, ch. 57½, par. 104.) The appellant complains that this is a classification, considered both on the population requirement and the requirement that the county not have been organized as a forest preserve district, which is arbitrary and unreasonable and renders the Act special or local legislation of the character prohibited by section 22 of article IV, of the Illinois constitution. He correctly acknowledges that municipal corporations are beyond the enumerated constitutional prohibition against grants to corporations of special or exclusive privileges, immunities or franchises. It is clear

that section 22 of article IV refers to private corporations, not municipal corporations. (*People ex rel. Curry* v. *Decatur Park Dist.*, 27 Ill.2d 434, 439; *People ex rel. Coutrakon* v. *Lohr*, 9 Ill.2d 539, 548, 549; *People ex rel. Gutknecht* v. *Chicago Regional Port Dist.*, 4 Ill.2d 363, 372, 373; *Kocsis* v. *Chicago Park Dist.* 362 Ill. 24, 41, 42.) Rather, his argument is founded on the concluding provision of section 22, which states that "In all other cases where a general law can be made applicable, no special law shall be enacted." The contention is, of course, that the Act, because the classification of counties is an arbitrary one, is a special law. In this, the appellant errs.

The prohibition by section 22 of article IV of the constitution of the passage of local or special laws does not mean that a law to be considered general shall affect every person and every place in the State alike. It means simply that a law shall operate uniformly throughout the State in all localities and on all persons in like circumstances and conditions. *Latham* v. *Board of Education*, 31 Ill.2d 178, 183; *People ex rel. Du Page County* v. *Smith*, 21 Ill.2d 572, 577, 578; *Kloss* v. *Suburban Cook County Tuberculosis Sanitarium Dist.*, 404 Ill. 87, 90.

Establishing classifications is primarily a legislative function. (*Gaca* v. *City of Chicago*, 411 Ill. 146, 149; *People* v. *Deatherage*, 401 Ill. 25, 40.) Classifications made by the legislature need not be logical, harmonious, scientific or even accurate, provided they will accomplish the legislative design and are not arbitrary. (*People ex rel. Curren* v. *Wood*, 391 Ill. 237, 254, 255; 411 Ill. 146, 150.) Only if it can be said that the classification is clearly unreasonable and palpably arbitrary will a court declare the statute invalid. (*Du Bois* v. *Gibbons*, 2 Ill.2d 392, 399; *Treece* v. *Shawnee Community Unit School Dist.*, 39 Ill.2d 136, 142.) And "A distinction in legislation is not arbitrary if any state of facts can reasonably be conceived that would sustain it, * * *." *Bagdonas* v. *Liberty Land and Investment Co.*, 309 Ill. 103,

110; *Illinois Association of Fire Fighters* v. *City of Waukegan*, 37 Ill.2d 423, 425.) Summarizing, a legislative classification is sustainable where founded upon a rational difference of situation or condition existing in persons or objects upon which the class rests, and where there is a reasonable basis for the classification in light of the objects and purposes to be accomplished. *People ex rel. Du Page County* v. *Smith*, 21 Ill.2d 572, 578; *Begich* v. *Industrial Com.*, 42 Ill.2d 32, 35.

The principal purpose of a conservation district, as expressed by the Act, is to "preserve and maintain wildland, other open land, scenic roadways and pathways * * * and otherwise promote the conservation of nature, flora and fauna, natural environment and natural resources of the district." (Ill. Rev. Stat. 1967, ch. 57½, par. 103.) Briefly stated, forest preserve districts are primarily intended to preserve and restore natural forests, together with their flora and fauna. (Ill. Rev. Stat. 1965, ch. 57½, par. 5.) Thus, although there are differences between the two types of conservation bodies, it can readily be seen that they have the common purpose, as the appellant concedes, of conserving our natural and scenic resources. There is a presumption that the General Assembly and appropriate committees studied the conservation needs and other conditions prevailing in the various counties of the State before enacting the legislation we now consider. (See *Du Bois* v. *Gibbons*, 2 Ill.2d 392, 399; *People ex rel. Stamos* v. *Public Building Com.*, 40 Ill.2d 164, 180.) The legislature could reasonably distinguish between counties fully constituted as forest preserve districts and counties lacking such a conservation agency. For example, the obvious unwisdom of authorizing a largely duplicating conservation district within a county already organized as a forest preserve district would direct that the creation of districts under the Act should be limited to other counties. A classification of counties lacking the benefit of a county wide forest preserve authority is not

arbitrary and unreasonable. Cf. *Kloss* v. *Suburban Cook County Tuberculosis Sanitarium Dist.,* 404 Ill. 87.

That the Act is applicable only to counties of less than 1,000,000 population does not invalidate it. Cook County is the only county in the State with a population in excess of 1,000,000 people and it is pointed out by the District that it is already incorporated as a forest preserve district. Even if it were not, it could not be held that the legislature clearly acted arbitrarily. A classification based on population is not objectionable if it is reasonable and bears a rational relationship to the objectives which the legislature seeks to accomplish. (*Treece* v. *Shawnee Community Unit School Dist.,* 39 Ill.2d 136, 141.) We can understand that the legislature, within its discretion, might wish to exclude indirectly from the Act's operation a densely populated county of over 1,000,000 people on the ground that a program of conservation of the type contemplated by the Act would be unworkable or unsuitable for such an area. The burden of proving the arbitrariness of a classification is on the one who challenges it. (*People* v. *Deatherage,* 401 Ill. 25, 40.) We cannot say that the population portion of the classification is clearly unreasonable and palpably arbitrary.

The judgment of the circuit court of Vermilion County, ordering a writ of *mandamus* to issue and sustaining the constitutionality of the Conservation District Act and the proposed bond issue and tax levy in question, is affirmed.

*Judgment affirmed.*